IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CHRISTOPHER TAYLOR,

    Plaintiff,

v.

RAVEN INDUSTRIES, INC.,
JASON M. ANDRINGA,
THOMAS S. EVERIST,
JANET M. HOLLOWAY,
KEVIN T. KIRBY,
MARC E. LEBARON,
LOIS M. MARTIN,
RICHARD W. PAROD, and
DANIEL A. RYKHUS,

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Christopher Taylor ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Raven Industries, Inc. ("Raven" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which CNH Industrial N.V. ("CNH") will acquire the

Company through CNH's subsidiary CNH Industrial South Dakota, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

2. On June 21, 2021, CNH and Raven jointly announced their entry into an Agreement and Plan of Merger, dated June 20, 2021 (the "Merger Agreement"). The Merger Agreement provides that each stockholder will be entitled to receive $58.00 in cash for each Raven share they own (the "Merger Consideration").[2]

3. On August 6, 2021, Raven filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Raven stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated.

---

[1] Non-party CNH is a Netherlands corporation with its principal executive offices located at 25 St. James's Street, London, SW1A 1HA, United Kingdom. CNH has industrial and financial services companies located in 44 countries and a commercial presence in approximately 180 countries. CNH shares trade on the New York Stock Exchange under the ticker symbol "CNHI." Non-party Merger Sub is a South Dakota corporation and wholly owned subsidiary of CNH.

[2] The approximate value of the Proposed Transaction is $2.1 billion.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Raven maintains and operates Engineered Films Division facilities in this District. Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

**PARTIES**

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Raven common stock.

10. Defendant Raven is a South Dakota corporation with its principal executive offices located at 205 East 6th Street, P.O. Box 5107, Sioux Falls, South Dakota 57117. Raven provides innovative, high-value products and systems throughout the world. The Company's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "RAVN."

11. Defendant Jason M. Andringa ("Andringa") has been a director of the Company since 2013.

12. Defendant Thomas S. Everist ("Everist") has been a director of the Company since 1996.

13.     Defendant Janet M. Holloway ("Holloway") has been a director of the Company since 2018.

14.     Defendant Kevin T. Kirby ("Kirby") has been a director of the Company since 2007.

15.     Defendant Marc E. LeBaron ("LeBaron") has been Chairman of the Board since May 2017, and a director of the Company since 2011.

16.     Defendant Lois M. Martin ("Martin") has been a director of the Company since 2018.

17.     Defendant Richard W. Parod ("Parod") has been a director of the Company since 2017.

18.     Defendant Daniel A. Rykhus ("Rykhus") has been President and Chief Executive Officer ("CEO") of the Company since 2010, and a director since 2008. Defendant Rykhus previously served as the Company's Executive Vice President ("EVP") from 2004 to 2010.

19.     Defendants identified in paragraphs 11 to 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20.     On June 21, 2021, Raven and CNH jointly announced in relevant part:

LONDON & SIOUX FALLS, S.D. (June 21, 2021) — CNH Industrial N.V. (NYSE: CNHI / MI: CNHI) today announced that it has entered into an agreement to acquire 100% of the capital stock of Raven Industries, Inc. (NASDAQ: RAVN), a US-based leader in precision agriculture technology for US$58 per share, representing a 33.6% premium to the Raven Industries 4-week volume-weighted average stock price, and US$2.1 billion Enterprise Value. The transaction will be funded with available cash on hand of CNH Industrial. Closing is expected to occur in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including approval of Raven shareholders and receipt of regulatory approvals.

The acquisition builds upon a long partnership between the two companies and will further enhance CNH Industrial's position in the global agriculture equipment market by adding strong innovation capabilities in autonomous and precision agriculture technology.

4

"Precision agriculture and autonomy are critical components of our strategy to help our agricultural customers reach the next level of productivity and to unlock the true potential of their operations," said Scott Wine, Chief Executive Officer, CNH Industrial. "Raven has been a pioneer in precision agriculture for decades, and their deep product experience, customer driven software expertise and engineering acumen offer a significant boost to our capabilities. This acquisition emphasizes our commitment to enhance our precision farming portfolio and aligns with our digital transformation strategy. The combination of Raven's technologies and CNH Industrial's strong current and new product portfolio will provide our customers with novel, connected technologies, allowing them to be more productive and efficient."

Our Board and Management are excited about this partnership and what it means for our future," said Dan Rykhus, President & Chief Executive Officer for Raven Industries. "For 65 years, our company has been committed to solving great challenges. Part of that commitment includes delivering groundbreaking innovation by developing and investing in our core capabilities and technology. By coming together with CNH Industrial, we believe we will further accelerate that path as well as bring tremendous opportunities and value to our customers — once again fulfilling our purpose to solve great challenges. Our relationship with CNH Industrial has expanded over decades, and we have a deep respect for one another and a shared commitment to transform agriculture practices across the world. We look forward to CNH Industrial leveraging the Raven talent and culture, as well as the Sioux Falls community, as part of their vision and future success."

"Raven Industries' capabilities, innovation culture, entrepreneurial spirit and engineering talent are impressive and will continue to thrive as part of the CNH Industrial family. Sioux Falls is and will continue to be a true center of excellence," added Wine. "We are incredibly excited to collaborate in bringing our customers more integrated precision and autonomous solutions, not only to improve productivity and profitability, but also promote more sustainable solutions and environmental stewardship. Together, our teams will create a stronger business for our employees, dealer network, and customers, enabling us to shape the future of agriculture, augment our world-leading sustainability credentials, and maximize our growth opportunities."

Headquartered in Sioux Falls, South Dakota, Raven Industries is organized into three business divisions: Applied Technology (precision agriculture), Engineered Films (high-performance specialty films) and Aerostar (aerospace) with consolidated net sales of US$ 348.4 million for the twelve months ended January 31, 2021. The company is a global technology partner for key strategic OEMs, agriculture retailers and dealers. The transaction is expected to generate approximately US$400 million of run-rate revenue synergies by calendar year 2025, resulting in US$150 million of incremental EBITDA.

The Engineered Films and Aerostar segments are industry leaders in the high performance specialty films and stratospheric platform industries, respectively, and CNH Industrial believes they represent attractive independent businesses with excellent near and long-term potential. Accordingly, CNH Industrial plans to

undertake a strategic review of each business to best position them for future success and maximize shareholder value.

CNH Industrial does not expect the proposed acquisition will have any impact on its guidance for 2021. The acquisition is expected to be funded with Group consolidated cash1 not affecting third party debt of industrial activities. Cash consideration for the transaction is not included in the free cash flow definition, and consequently it will not affect its free cash flow guidance for the FY 2021E.

Barclays and Goldman Sachs acted as financial advisors to CNH Industrial and Sullivan & Cromwell LLP as its legal advisor. J.P. Morgan Securities LLC acted as financial advisor to Raven and Davis Polk & Wardwell LLP as its legal advisor.

**The Proxy Statement Contains Material Misstatements or Omissions**

21. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Raven's stockholders. The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed decision as to how to vote with respect to the Proposed Transaction.

22. As detailed herein, the Proxy Statement wrongfully omits material information or provides Company stockholders with materially misleading information concerning: (a) Raven's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan Securities LLC ("JPM"); and (b) the background of the Proposed Transaction.

*Material Omissions Concerning Raven's Financial Projections and JPM's Financial Analyses*

23. The Proxy Statement omits material information regarding the Company's financial projections, including the Company's unlevered free cash flows for fiscal yearsending 2021 through January 31, 2031. As reflected in the Proxy Statement, these are the projections that JPM used in connection with its *Discounted Cash Flow Analysis*.[3]

---

[3] Notably, the Proxy Statement also fails to disclose the line items underlying the Company's: (a) EBITDA; and (b) unlevered free cash flows.

2. The Proxy Statement also describes JPM's fairness opinion and its underlying analyses. That description, however, omits key inputs and underlying assumptions. The absence of this information precludes Company stockholders from fully understanding these analyses. As a result, those same stockholders cannot determine what weight, if any, to place on JPM's fairness opinion in deciding how to vote with respect to the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Strongbridge's stockholders.

24. The Proxy Statement wrongfully omits the individual multiples and financial metrics for each of the selected companies analyzed by JPM in connection with its *Public Trading Multiples Analysis* and *Public Trading Multiples Sum-of-the-Parts Analysis*.

25. With respect to JPM's *Discounted Cash Flow Analysis* excluding Raven's Autonomy business, the Proxy Statement fails to disclose: (a) Raven's estimated unlevered free cash flows for the projection period from April 30, 2021 through January 31, 2031; (b) the inputs and assumptions underlying the discount rate range of 9.25% to 10.25%; (c) the financial metric that multiples were applied to derive the terminal values for the analysis; (d) the Company's terminal values; (e) Raven's estimated net debt as of April 30, 2021; and (f) the Company's fully diluted shares outstanding.

26. With respect to JPM's *Discounted Cash Flow Analysis* for Raven's Autonomy business, the Proxy Statement fails to disclose: (a) the unlevered free cash flows that Raven's Autonomy business is expected to generate from April 30, 2021 through January 31, 2031; (b) the inputs and assumptions underlying the discount rate range of 16.00% to 17.00%; (c) the financial metric that multiples were applied to derive the terminal values for the analysis; and (d) the terminal values.

27. With respect to JPM's *Discounted Cash Flow Sum-of-the-Parts Analysis*, the Proxy Statement fails to disclose: (a) the discount rates utilized in the analysis; (b) the financial metric that

7

multiples were applied to derive the terminal values for the analysis; (c) the terminal values; and (d) the Company's fully diluted shares outstanding.

28. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

29. The omission of this information renders the statements in the "Projected Financial Information" and "Opinions Raven's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

30. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

31. For example, the Proxy Statement fails to disclose whether the standstill provisions in the confidentiality agreements the Company entered into with six parties are "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding these parties from submitting a topping bid for the Company.

32. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

33. Any reasonable Raven stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

34. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

35. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Raven will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

36. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

37. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

38. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Raven's financial projections, the data

9

and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, JPM, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

40. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

41. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

43. The Individual Defendants acted as controlling persons of Raven within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Raven and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Raven's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 27, 2021

Respectfully submitted,

/s/ Richard A. Acocelli
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

OF COUNSEL:

Brian D. Long
**LONG LAW, LLC**
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: bdlong@longlawde.com

*Attorneys for Plaintiff*